*Decision will be entered under Rule 50.*

JAMES TURNER, HENRY ELWYN WORCESTER AND CENTRAL HANOVER BANK AND TRUST COMPANY (FORMERLY CENTRAL UNION TRUST COMPANY OF NEW YORK), AS EXECUTORS OF THE LAST WILL AND TESTAMENT OF JAMES NEWBEGIN JARVIE, DECEASED, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 58971. Promulgated October 30, 1934.

*John M. Perry*, Esq., *Harold A. Donegon*, Esq., *John W. Drye, Jr.*, Esq., and *Lester L. Colbert*, Esq., for the petitioners.
*Eugene Smith*, Esq., for the respondent.

## OPINION.

GOODRICH: Respondent determined a deficiency of $22,513.37 in estate tax against the estate of James Newbegin Jarvie, who died on June 21, 1929, a resident of Montclair, New Jersey. Petitioners, who are the duly qualified executors of the will of said decedent, contend that the deficiency is not owing and that the estate tax liability is already overpaid. The controversy concerns the computation of decedent's net estate and petitioners allege two errors in respondent's finding of that amount. They contend, first, that respondent should have deducted from gross estate as a claim against it $627,310.23, being the balance owing at the time of his death upon a charitable pledge made by decedent which petitioners subsequently paid. They contend, next, that respondent erroneously computed the amount of the residuary estate passing to charity, by deducting from the gross estate as charges against it the sum of decedent's unpaid pledges to charity and the value of an annuity bequeathed to his sister. As to the first issue petitioners concede that respondent properly disallowed the deduction of seven unpaid pledges, totaling $14,949.98, and respondent admits error in failing to deduct one such pledge of $10,000.

The facts are not in dispute and as our findings of fact we adopt the stipulation of the parties.

The respective concessions leave for our decision under the first issue the deductibility of only one item. Early in 1925, by written commitment, Jarvie made a pledge to the International Committee of the Young Men's Christian Association, which it is stipulated was a corporation of a class described in section 303 (a) (3) of the Revenue Act of 1926, increasing the amount thereof from time to time to a total of $1,000,000. The committee had acquired a plot of ground in the city of Jerusalem; Jarvie undertook to supply the funds for the erection of an elaborate building on it. The committee agreed to make efforts to secure an endowment, the income from which was to be applied to the upkeep and maintenance of the building and for local and national work of the organization and later, when Jarvie increased his subscription, pledged itself to use its best endeavors to increase the endowment. It agreed also to proceed with the drawing of plans and the letting of contracts for the erection of the building and, upon its completion, to assume its control and maintenance and use it for Y. M. C. A. purposes. The provisions of the agreements were carried out; the building was completed and, since its dedication in April 1933, has been maintained and operated by the committee for the general purposes of the Association. Prior to his death, Jarvie made payments on his pledge totaling $372,689.77, leaving a balance owing of $627,310.23, which was a valid, legal and enforceable debt or obligation of his estate, and which was paid in

full by petitioners in 1930. Respondent refused to allow that payment as a deduction from decedent's gross estate. Whether he was correct in so refusing is the only dispute remaining under the first issue.

Respecting the second issue, it appears that by his will Jarvie bequeathed his entire residuary estate to the Jarvie Commonweal Fund, which is a charitable, exempt corporation under the provisions of section 303 (a) (3) of the Revenue Act of 1926. He also left to his sister an annuity which, at the date of his death, was of a value of $74,287.87, and was a charge upon his estate. In determining the amount of the residuary estate passing to charity, respondent deducted from the gross estate the total of the pledges remaining unpaid at decedent's death, and also the value of the annuity. Petitioners contend this action was erroneous.

We sustain respondent's disallowance of the deduction of the amount of the unpaid pledge to the International Committee. Section 303 (a) (1) of the Revenue Act of 1926, as amended by the Revenue Act of 1928, allows a deduction from the value of the gross estate in determining the net estate subject to tax, of claims against the estate to the extent they were " incurred or contracted bona fide and for an adequate and full consideration in money or money's worth." There is no question but that this pledge was contracted in good faith and was a valid and enforceable claim against the estate; the question is whether it was contracted upon such a consideration as the statute requires. Upon the evidence before us it seems clear that it was not so contracted; that such a consideration was lacking. We are shown only that Jarvie desired the building in Jerusalem to be erected, and that he undertook to supply funds for that purpose. He made a gift, apparently motivated solely by his own desires and generosity. His pledge was not made in consideration of the pledges of others, which we held sufficient to satisfy the statutory requirement in our decision in *Jeptha H. Wade, Jr., et al., Executors*, 21 B. T. A. 339, upon which petitioners rely, and that fact serves to distinguish this proceeding from the *Wade* case. See *Esther Jackson Porter et al., Executors*, 23 B. T. A. 1016.[1]

The decision in *Glaser* v. *Commissioner*, 69 Fed. (2d) 254 (affirming 27 B. T. A. 313), is controlling. There the court, after discussing the decision of the Court of Appeals of the Sixth Circuit in *Latty* v. *Commissioner*, 62 Fed. (2d) 952,[2] and the decision of the Court of Appeals of the Second Circuit in the *Porter* case [1] in connection with its consideration of the statutory provisions here involved, said:

---

[1] Modified 60 Fed. (2d) 673; affirmed on another issue, 288 U. S. 436.
[2] Affirming 23 B. T. A. 1250.

It is the clear understanding in both circuits that Sec. 303 (a) (1) does not justify making deduction from the gross estate in the case like the one presented here, where there was not a business transaction on the part of the decedent, or a contract intended to augment his estate or to grant him some right or privilege he did not possess before, or to discharge him from any existing obligation but only a contemplated bounty was involved.

Whether the court's interpretation of the phrase " for an adequate and full consideration in money or money's worth " necessarily narrows our understanding of it as expressed in the *Wade* decision, we need not here decide, for it is apparent that petitioners' contention must fail under either decision.[3]

As their second contention petitioners urge that if the unpaid pledges (including those amounting to $14,949.98) are not deductible as claims against the estate, respondent should not be permitted to deduct them from gross estate in determining the residuary estate under section 303 (a) (3) and so reduce the amount deductible as a bequest to charity under section 303 (a) (3). They make the same contention respecting the value of the annuity. They claim the rule to be that the full amount of a charitable bequest should be deducted from gross estate, irrespective of the fact that the beneficiary may ultimately receive less than the amount bequeathed.[4]

Assuming, *arguendo*, that to be so, we see no error in respondent's action here. The residuary estate was bequeathed to charity; its amount must be determined. So far as appears from this record, respondent, in determining the residuary estate, reduced the gross estate by all specific bequests, enforceable claims against it, and other proper charges upon it. Petitioners complain of no such deductions except the unpaid pledges and the annuity value. Yet it is stipulated that these pledges were valid and enforceable claims against the estate. That we hold them not deductible as claims against the estate because not incurred upon such a consideration as the statute requires is immaterial.[5] Whether deductible or not under the taxing statute, they were debts of the estate and had to be paid, and their payment in fact reduced the residuary estate. It is likewise stipulated that the annuity was a charge upon the estate. The amount necessary to discharge that annuity (the calculation of which is not in dispute) also served to diminish the remainder, or residue of the estate, and respondent was right in deducting it; *William Nelson Cromwell et al., Executors*, 24 B. T. A. 461. In other words, before

---

[3] Cf. *Frances Plumer McIlhenny et al., Executors*, 22 B. T. A. 1093; *Georgianna M. Romberger et al., Executors*, 21 B. T. A. 193.

[4] Petitioners rely upon *John Aspinwall Hadden, Jr., et al., Executors*, 10 B. T. A. 741. But this case related to the diminution of charitable bequests by the amount of inheritance taxes.

[5] *Mechanics Bank of New Haven et al., Executors*, 20 B. T. A. 1033.

**450**

the residuary estate could be ascertained, these charges had to be met or provided for from the gross estate. What was left made up the residuary estate.[6] The amount of it, respondent properly determined, and that he properly allowed the deduction of that amount as a bequest to charity is not disputed.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*

TRAMMELL and TURNER dissent.

---

ARUNDELL, dissenting: The majority holding—while technically abiding by the literal words of the statute—allows technicalities to obscure the " beneficent purpose of Congress " (*Lederer* v. *Stockton*, 260 U. S. 3) which has been manifested in all revenue acts in allowing deductions for gifts to and exemption from tax of income of charitable corporations. In the case cited the Supreme Court did not allow the technical formality of a trust to stand in the way of exemption of income which the trustee should have collected but which he allowed a charitable corporation to retain and use. In *Trinidad* v. *Sagrada Orden de Predicadores*, 263 U. S. 578, the Court took into consideration " the benefit which the public derives from corporate activities of the class named." This was evidently the view of the Circuit Court of Appeals for the Second Circuit in *Porter* v. *Commissioner*, 60 Fed. (2d) 673, where, upon arriving at the conclusion that the recipient of a promised gift was an educational institution, deduction was allowed to the executors for the amount paid in fulfillment of the decedent's promise.

Following the examples of these cases, I think that a proper consideration for the purpose of Congress at least permits—if it does not require—the deduction here claimed.

---

MATTHEWS: I agree with the foregoing dissent, but am of the opinion that the term " transfers " in section 303 (a) (3) is sufficiently broad to cover the payment by the executors of the balance of the amount promised by decedent in his lifetime to the Y. M. C. A.

SMITH concurs.

---

[6] " Residue " is that which remains of something after taking away some part of it. It means, in the absence of language showing a contrary intention, the estate remaining after payment of charges, debts and particular legacies; and no residue exists until such burdens have been paid. 40 Cyc. 1570; *Wetmore* v. *St. Luke's Hospital*, 9 N. Y. S. 753; *In re Hamlin*, 172 N. Y. S. 787.